IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-521

No. COA22-277

Filed 2 August 2022

Guilford County, No. 18 JT 52

IN THE MATTER OF:

A.N.S., Jr.

Appeal by Respondent from order entered 29 December 2021 by Judge William B. Davis in Guilford County District Court. Heard in the Court of Appeals 12 July 2022.

*Mercedes O. Chut for Guilford County Department of Health and Human Services.*

*Ward and Smith, P.A., by Mary V. Cavanagh, for Guardian ad litem.*

*Mary McCullers Reece for Respondent-Appellant Father.*

COLLINS, Judge.

Respondent-Father appeals from the trial court's order terminating his parental rights to his minor child on the grounds on neglect and dependency. We affirm.

## I.    Background

Father is the biological father of Arthur,[1] a child born in December 2014.  On 7 May 2018, Father shot and killed Arthur's mother in Arthur's presence; Father was charged with the first-degree murder of Arthur's mother.  On 9 May 2018, based on the fatal shooting of Arthur's mother, the Guilford County Department of Social Services ("DSS") took nonsecure custody of Arthur and his stepsibling.[2]  DSS filed a petition alleging Arthur and his stepsibling were abused, dependent, and neglected.

On 8 October 2018, the matter came on for an adjudication hearing; the trial court adjudicated Arthur and his stepsibling abused, neglected, and dependent.  The trial court found that both children had witnessed Father fatally shoot Arthur's mother as she attempted to leave the family home while escorted by law enforcement. The trial court moved to the dispositional stage and relieved DSS of the obligation to make reasonable efforts to reunify Arthur with Father and suspended all contact between Father and Arthur.  Arthur and his stepsibling were placed with maternal grandparents.

In May 2019, DSS filed a petition to terminate Father's parental rights based on the grounds of neglect and dependency.  On 31 January 2020, Father was convicted

---

[1] We use a pseudonym to protect the identity of the minor child.  *See* N.C. R. App. P. 42.

[2] While Arthur's stepsibling was part of the juvenile proceedings, this appeal does not concern his stepsibling.

of the first-degree murder of Arthur's mother and sentenced to life in prison without the possibility of parole. The hearing on the petition to terminate Father's parental rights was held on 10 May 2021. The trial court terminated Father's rights on the grounds of neglect and dependency and concluded that it was in Arthur's best interests to terminate Father's parental rights. Father timely appealed.

## II.   Discussion

¶ 5        In a termination of parental rights proceeding, the trial court must adjudicate the existence of any of the grounds for termination alleged in the petition. At the adjudication hearing, the trial court must "take evidence [and] find the facts" necessary to support its determination of whether the alleged grounds for termination exist. N.C. Gen. Stat. § 7B-1109(e) (2019). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5-6, 832 S.E.2d 698, 700 (2019) (citing N.C. Gen. Stat. § 7B-1109(f)).

¶ 6        When reviewing the trial court's adjudication of grounds for termination, we examine whether the trial court's findings of fact "are supported by clear, cogent and convincing evidence and [whether] the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). Any unchallenged findings are "deemed

supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citations omitted). The trial court's conclusions of law are reviewed de novo. *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

¶ 7 The first ground for termination found by the trial court was neglect under N.C. Gen. Stat. § 7B-1111(a)(1). This subsection allows for parental rights to be terminated if the trial court finds that the parent has neglected their child to such an extent that the child fits the statutory definition of a "neglected juvenile." N.C. Gen. Stat. § 7B-1111(a)(1) (2019). A neglected juvenile is defined, in relevant part, as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2019).

¶ 8 "[E]vidence of neglect by a parent prior to losing custody of a child – including an adjudication of such neglect – is admissible in subsequent proceedings to terminate parental rights." *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984).

> Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of a likelihood of future neglect by the parent. When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing.

*In re R.L.D.*, 375 N.C. 838, 841, 851 S.E.2d 17, 20 (2020) (ellipses, quotation marks, and citations omitted).

In its termination order, the trial court made the following relevant findings of fact:

> 2. The juveniles have been in the legal and physical custody of the Guilford County Department of Health and Human Services (hereinafter referred to as "the Department") a consolidated county human services agency, pursuant to Court Order continuously since May 7, 2018.
>
> . . . .
>
> 10. The conditions that led to the juveniles coming into custody include but are not limited to domestic violence in the presence of the juveniles; injurious environment; the juveniles witnessing the fatal shooting of their mother by [Father]; [Father] is charged with the mother's murder[.]
>
> 11. The juveniles were adjudicated abused, neglected, and dependent on August 27, 2018.
>
> . . . .
>
> 13. The Department has not developed a service agreement with nor does the Department intend to offer a service agreement to the [Father], due in pertinent part to the egregious circumstances that brought the juveniles into custody whereby [Father] fatally shot and killed the [Mother], in the presence of the juveniles and as ordered by the Court in the Pre-Adjudication, Adjudication and Disposition Order dated August 27, 2018, filed on October 8, 2018, which relieved the Department of making reasonable efforts of reunification with [Father]. In addition, [Father] has been charged and convicted of First Degree Murder in regard to the death of the mother,

although as of January 31, 2020, the conviction is under appeal. Based on these facts, the Department did not have any services available that could be offered to [Father] in order to correct the conditions that brought the juveniles into custody with the Department.

¶ 10    Based upon these findings, the trial court concluded,

18. Grounds exist to terminate the parental rights of [Father], pursuant to N.C.G.S. § 7B-1111(a)(1), given that the parent abused and/or neglected the juveniles, there is ongoing neglect and a likelihood of the repetition of abuse and/or neglect.

a. [Father's] past abuse and neglect of the juvenile [Arthur] was proven as detailed in the Pre-Adjudication, Adjudication and Disposition Order dated August 27, 2018, filed on October 8, 2018, specifically exposing him to the trauma of domestic violence and the violent death of his mother. [Father's] behavior has deprived his child of contact with his father for the past two years and with his mother for the remainder of his life. His past actions and lack of regard for his child's well-being are indicative of a likelihood of repetition of neglect in the event that custody was returned to him.

¶ 11    Father does not challenge the findings of fact, and they are binding on appeal. *In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58. The findings amply support the trial court's conclusion of law that grounds exist to terminate Father's parental rights for neglecting Arthur. Arthur was removed from Father's care on 7 May 2018 because he watched Father fatally shoot his mother. Arthur was adjudicated abused, neglected, and dependent as a result. Since Arthur's adjudication, Father was

convicted of the first-degree murder of Arthur's mother.[3] Furthermore, the Department has not and will not develop a service agreement with Father because of the egregious circumstances that brought Arthur into custody. Thus, Father has received no services while Arthur has not been in Father's care, and he will receive none in the future. These facts support the trial court's conclusion that: Father neglected Arthur; there is ongoing neglect; there is a likelihood of the repetition of neglect in that Father did not and likely will "not provide proper care, supervision, or discipline" of Arthur; and Arthur lived and would likely live "in an environment injurious to the juvenile's welfare" were he ever returned to Father's care. *See* N.C. Gen. Stat. § 7B-101(15).

Father argues that "[i]t is clear that the trial court deemed the event that led to the 2018 adjudication to be a sufficient ground for termination in and of itself." We disagree. Not only did the trial court consider Father's murder of Arthur's mother in front of Arthur and the resulting abuse, neglect, and dependency adjudication, the

---

[3] Although Father's conviction is pending appeal, a conviction for first-degree murder carries a mandatory sentence of life in prison without parole. N.C. Gen. Stat. § 14-17(a) (2019). Father appealed the trial court's denial of his *Batson* objection, and this Court remanded the matter to the trial court for a *Batson* hearing in *State v. Smith*, 2021-NCCOA-391. Upon remand, the trial court held a *Batson* hearing and denied Father's *Batson* objection; on 12 November 2021, Father appealed the denial of his *Batson* objection to this Court in COA22-307. The record was filed on 13 April 2022 and Father filed his brief on 8 June 2022. We again note that Father does not challenge the trial court's conclusion that he murdered Mother. Moreover, the standard of proof in a criminal trial is guilt beyond a reasonable doubt while the standard of proof in a termination of parental rights case is clear, cogent, and convincing evidence of grounds for termination.

trial court also considered Father's subsequent murder conviction and the fact that Father has not and will not receive any DSS services which are designed to help an offending parent rectify the conditions that caused the child to be removed.

Father also argues that the trial court failed to consider the likelihood that Arthur will never be returned to his Father's care. Father cites *In re C.A.S.*, 231 N.C. App. 514, 753 S.E.2d 743 (2013) (unpublished), to support his argument that Arthur could not be neglected if Father is in prison. In *In re C.A.S.*, our Court reversed termination of parental rights based on *abuse* where there was "almost no probability of future abuse because father will be incarcerated for at least 15 years" and thus there was "not enough evidence to support the trial court's conclusion that there is a probability of repetition of abuse." *Id.* However, abuse and neglect are different grounds and Father cannot "provide proper care, supervision, or discipline" to Arthur if Father is in prison for life without the possibility of parole. *See* N.C. Gen. Stat. § 7B-101(15).

### III. Conclusion

The trial court did not err by terminating Father's parental rights based on the ground of neglect. We need not reach Father's argument that the trial court erred by terminating his parental rights based on the ground of dependency. *In re D.W.P.*, 373 N.C. 327, 340, 838 S.E.2d 396, 406 (2020). The trial court's order is affirmed.

AFFIRMED.

Chief Judge STROUD and Judge ARROWOOD concur.